IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-26854 MER |
| MARK G. GILL ) | |
| NANCY J. GILL ) | Chapter 11 |
| ) | |
| Debtors. ) | |
| ) | |
| ) | |
| KENNETH J. ROSENTHAL ) | Adversary No. 09-1723 MER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MARK G. GILL ) | |
| NANCY J. GILL ) | Signed/Docketed |
| ) | July 28, 2011 |
| Defendants. ) | |

## ORDER

THIS MATTER comes before the Court on the *Complaint to Determine Dischargeability of Debt* (the "Complaint") filed by Kenneth J. Rosenthal ("Rosenthal") and the *Answer* filed by Mark G. Gill and Nancy J. Gill (collectively, the "Gills").

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 (a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns a determination as to the dischargeability of a particular debt.

## BACKGROUND FACTS

Based on the Complaint, Answer, Pre-Trial Statement,[1] and evidence presented at trial, the Court finds the following facts are uncontested:

• Rosenthal is the homeowner of the residence located at 9385 Riviera Hills Drive, Greenwood Village, Colorado 80111 (the "Property"). Complaint ¶ 6, Answer ¶ 6. Stipulated Facts ¶ 1.

---

[1] Pre-Trial Statement, Part B "Statement of Stipulated and Uncontested Facts" (Docket #66).

- At all times relevant to this proceeding, Colorado Regional Construction, Inc. ("CRC") was a Colorado corporation doing business as a construction company. Complaint ¶ 7. However, CRC has not been in business since August 2009. Answer ¶ 7.

- Mark and Nancy Gill are the owners, officers, directors and shareholders of CRC. Complaint ¶ 8, Answer ¶ 8, Stipulated Facts ¶ 3.

- Mark and Nancy Gill are persons in control of the finances and financial decisions of CRC. Complaint ¶ 9, Answer ¶ 9.

- In and about December of 2005, Rosenthal entered into an agreement with CRC whereby Rosenthal hired CRC (as general contractor) to provide services, material, and supplies to remodel his home, the Property (the "Project"). Complaint ¶ 10, Answer ¶ 10, Stipulated Facts ¶ 2.

- CRC and Rosenthal initially agreed on a remodeling plan using a conceptual estimate prepared by CRC. Stipulated Facts ¶ 4.

- CRC agreed to work on a time and material basis plus ten percent for overhead and five percent for profit. Stipulated Facts ¶ 5.

- Each month, CRC gave the owner an itemized bill by the general contractor for work performed. Stipulated Facts ¶ 6. For the first five pay applications, Rosenthal paid CRC all charges in full.[2] Stipulated Facts ¶ 7.

- The amounts received by CRC from Rosenthal for subcontractor charges included in each Pay Application were to be held in trust by CRC for its subcontractors. Stipulated Facts ¶ 8.

- Subcontractors submitted invoices to CRC for payment for labor, services, materials, and supplies provided by the subcontractors for the benefit of the Project. Complaint ¶ 13, Answer ¶ 13.

- Three subcontractors and CRC filed mechanics' liens against the Property for payment. Stipulated Facts ¶ 9.

- In May 2007, Rosenthal and the Gills were involved in a state court law suit filed in the District Court for Arapahoe County, Colorado, Case No. 2007 CV 487, captioned *E Light Electric Services, Inc. et al v. Colorado Regional Construction, Inc. et al* (the "State Court"). Complaint ¶ 11, Answer ¶ 11. In the State Court, Rosenthal (as a third-party plaintiff) filed a Third-Party Complaint against Mark and Nancy Gill (as defendants). Complaint ¶ 12, Answer ¶ 12. The Gills filed answers in the State Court. Complaint ¶ 12, Answer ¶ 12.

---

[2] See Rosenthal Exhibit 1, first two pages of pay applications dated (1) 1/31/2006, (2) 2/28/2005 [sic], (3) 3/31/2006, (4) 5/1/2006, (5) 6/1/2006, (6) 6/30/2006, and (7) 10/16/2006.

- In the State Court case, Rosenthal sought remedies under the Colorado Construction Trust Fund Statute, COLO. REV. STAT. § 38-22-127 (the "Trust Fund Statute"), arising out of non-payment for labor, services, materials and supplies with respect to the Property. Complaint ¶ 4, Answer ¶ 4.

- During the course of the State Court proceeding, including trial, Mark and Nancy Gill acted as the representatives of, and made decisions for, CRC. Complaint ¶ 19, Answer ¶ 19.[3]

- The State Court proceeding was in progress when the Gills filed their bankruptcy petition on August 17, 2009. Complaint ¶ 20, Answer ¶ 20.

- In this Adversary Proceeding, Rosenthal seeks a determination that the debt arising out of the Gills' violations of the Trust Fund Statute is not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4).[4] Complaint ¶ 5.

- The Gills have admitted receiving salaries and income from CRC on a periodic basis from January 2006 until they filed bankruptcy. Complaint ¶ 24, Answer ¶ 24.

- CRC received funds from Rosenthal to pay for services, materials and supplies provided to the Project. Complaint ¶ 26, Answer ¶ 26.

- On October 19, 2010, District Court Judge John L. Wheeler entered an Order in the State Court case, *ORDER - Re: Findings of Fact, Conclusions of Law and Entry of Judgment - Colorado Lien Trust Fund Claims* (the "10/19/10 Order").[5] The 10/19/10 Order addresses the claims under the Trust Fund Statute, civil theft, and treble damages.
- On October 21, 2010, District Court Judge John L. Wheeler entered an Order in the State Court case, *ORDER - Re: Findings of Fact and Conclusions of Law - Partial Entry of Judgment* (the "10/21/10 Order").[6] The 10/21/10 Order addresses broader claims such as breach of contract and unjust enrichment between E Light Electrical Services, Inc., Rosenthal, and CRC.

- On December 22, 2010, District Court Judge John L. Wheeler entered an Order in the State Court case, *ORDER - Re: Findings of Fact and Conclusions of Law - Entry of Judgment -*

---

[3] While the Gills admitted this allegation, they later asserted they were only present the first two or three days of the trial which was held over a period of several months. *See* Pre-Trial Statement, p.1, ¶ A.2, "Defendants' Defenses" (Docket #66). The State Court trial transcripts from June 22, 2009 and June 24, 2009, reflect both Mark Gill and Nancy Gill were present at the State Court trial on those dates and that Mark Gill testified as President of CRC (Rosenthal Exhibit 17A and 17B).

[4] Unless otherwise noted in the text, statutory references are to Title 11 of the United States Code.

[5] Rosenthal Exhibit 19.

[6] Rosenthal Exhibit 20.

*Trust Fund Claims* (the "12/22/10 Order").[7] The 12/22/10 Order addresses the unresolved issues from the 10/21/10 Order.

## SUMMARY OF THE PLEADINGS

Rosenthal's Complaint includes two claims for relief: (1) a finding of a violation of the Trust Fund Statute, COLO. REV. STAT. § 38-22-127 and (2) a finding treble damages are appropriate under COLO. REV. STAT. § 18-4-401.[8] Rosenthal asserts the State Court entered a judgment against CRC and in favor of Rosenthal and certain subcontractors under COLO. REV. STAT. 38-22-127 "for a total trust fund claim of $59,297.44, treble damages, attorney fees and costs."[9] Rosenthal asserts the judgment renders the Gills personally and such liability is nondischargeable under § 523(a)(4).

The Gills argue the State Court held a trial over a period of several months and they were only present the first two or three days. The Gills maintain the State Court entered its findings on the first five pay applications from CRC to Rosenthal, but that CRC worked for Rosenthal for several months after the fifth pay application and incurred actual costs exceeding $99,244. The Debtors believe CRC has a valid lien recorded against the Property in the amount of $99,244, and contend they are entitled to an offset in that amount based on the sixth and final (seventh) pay applications.

## DISCUSSION

**A.     CRC Violated Colorado's Trust Fund Statute and Civil Theft Statute.**

COLO. REV. STAT. § 38-22-127(1) provides in relevant part:

Moneys for lien claims made trust funds–disbursements–penalty

(1) All funds disbursed to any contractor or subcontractor under any building, construction, or remodeling contract or on any construction project shall be held in trust for the payment of the subcontractors, laborer or material suppliers, or laborers who have furnished laborers, materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

---

[7] Rosenthal Exhibit 21.

[8] Rosenthal's Complaint as filed indicates it is five (5) pages in length. However, only pages 1, 2, 3, and 5 (consisting of paragraphs 1 through 29) appear in the Court's records. Likewise, the Gill's Answer is only responsive as to paragraphs 1 through 29, suggesting they did not receive page 4. Based on the Court's review of the Complaint, page 4 would have contained part of the allegations regarding the first claim for relief and all of the allegations supporting the second claim for relief.

[9] Pre-Trial Statement, p. 1., ¶ A.1, "Plaintiff's Claims" (Docket #66).

The 10/19/10 Order reflects Judge Wheeler considered the presentation of testimonial and documentary evidence and legal argument from the trial held on June 23-24, July 24, September 9-10, 2009, May 17 and June 28, 2010.[10] Throughout the six-page 10/19/10 Order, Judge Wheeler set forth the relevant facts, an analysis of the Colorado Mechanics' Lien Trust Fund Statute, and directed entry of judgment as follows:

a. On the claim of violation of the Colorado Mechanic's Lien Trust Statute, C.R.S. § 38-22-127(1), against Colorado Regional Construction, Inc., and in favor of Kenneth Rosenthal (on behalf of E Light Electric Services, Inc.; Metro Carpet and Flooring, LLC; The Door Company; and T&G Hardwood), E Light Electric Services, Inc. and Metro Carpet and Flooring, LLC, for all amounts paid by Rosenthal to CRC that were intended to cover the aforementioned subcontractors' invoices included in the first five pay applications, and which were unpaid by CRC to the aforementioned subcontractors as follows:

   (1) Kenneth Rosenthal [on behalf of E Light Electric Services, Inc. ($27,500.50; Metro Carpet and Flooring, LLC ($6,384.76); The Door Company ($5,122.18); and T&G Hardwood ($20,290.00)]: $59,297.44

   (2) E Light Electric Services, Inc.: $27,500.50

   (3) Metro Carpet and Flooring, LLC: $6,384.76

b. Pursuant to C.R.S. § 38-22-127(5), on the claim of civil theft, against Colorado Regional Construction, Inc. and in favor of Kenneth Rosenthal, E Light Electric Services, Inc., and Metro Carpet and Flooring, LLC, for the same reasons and in the same amount as set forth in subparagraph a. above, plus treble damages and reasonable attorneys' fees pursuant to pursuant to [sic] C.R.S. § 18-4-405.

c. All claims for attorneys' fees and costs shall be submitted within thirty (30) days of this Order.

d. But for the automatic stay in the Bankruptcy Court pursuant to 11 U.S.C. § 362(a), the Judgment entered against Colorado Regional Construction, Inc., would also be entered against Mark and Nancy Gill, individually.[11]

There was much testimony at this Court's trial regarding the pay applications at issue, CRC's bank statements and disputes among the parties. However, the Court believes the primary issue is whether this Court should afford the 10/19/10 Order preclusive effect under the doctrine of collateral estoppel. Collateral estoppel, or issue preclusion, is a doctrine prohibiting the relitigation of issues of ultimate fact between the same parties that have been "determined by a valid and final

---

[10] Rosenthal Exhibit 19, p. 1.

[11] Rosenthal Exhibit 19, p. 6. Emphasis in original.

judgment."[12]  Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt.[13]  On this point, the Tenth Circuit has stated:

> In *In re Wallace*, 840 F.2d 762 (10th Cir. 1988) we recognized the distinction made by the Supreme Court in [*Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979)] between *res judicata* and collateral estoppel in bankruptcy proceedings and in so doing we stated that although the bankruptcy court ultimately determines whether a debt is dischargeable under 11 U.S.C. § 523, the doctrine of collateral estoppel may be invoked to preclude relitigation of the factual issues underlying the determination of dischargeability. *Id*. at 764-65.  In such circumstances, collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as the one litigated in the earlier state proceeding; (2) the issue was actually litigated in the prior proceeding; and (3) the state court's determination of that issue was necessary to the resulting final and valid judgment.  *Id*.[14]

The party asserting collateral estoppel bears the burden of proving its application.[15]  In determining whether collateral estoppel applies to prior state court proceedings, a federal court must observe the mandates of 28 U.S.C. § 1738, which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1 ("Full Faith and Credit Statute").[16]  Under the Full Faith and Credit Statute, a federal court looks to the preclusion law of the state in which the judgment was rendered.[17]

Under applicable Colorado law, collateral estoppel applies only if four conditions have been satisfied: (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; (2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the

---

[12] *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir. 1997).  Collateral estoppel must be distinguished from *res judicata*, or claim preclusion, under which a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.  *See East Plains Development Corp. v. King* (*In re Faires*), 123 B.R. 397, 401 (Bankr. D. Colo. 1991).

[13] *Grogan v. Garner*, 498 U.S. 279, 284-85 n.11 (1991).

[14] *Nelson v. Tsamasfyros* (*In re Tsamasfyros*), 940 F.2d 605, 606-607 (10th Cir. 1991).

[15] *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990).

[16] *Phelps*, 122 F.3d at 1318.

[17] *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 624 (10th Cir. BAP 2005); *In re Sutherland-Minor*, 345 B.R. 348, 353 (Bankr. D. Colo. 2006).

prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[18]

The first condition is met because CRC's liability to Rosenthal under the Trust Fund Statute, COLO. REV. STAT. § 38-22-127(1), and for civil theft and treble damages, COLO. REV. STAT. §§ 38-22-127(5) and 18-4-405 are issues that were actually and necessarily determined in the 10/19/10 Order.

Regarding the second and fourth elements, the Gills were not direct parties to the State Court action; however, they were the sole officers, directors and shareholders of CRC and they were the persons in control of the finances and financial decisions of CRC. While they did not participate in the entire trial, Mr. and Mrs. Gill were present for a portion of the trial and Mr. Gill testified in the matter. Additionally, as is more fully set forth below, "[u]nder Colorado law, an individual in complete control of the finances and financial decisions of an entity which violated the Trust Fund Statute is personally liable for such violation."[19] The Court believes the Gills had a full and fair opportunity to, and actually did to an extent, litigate the issues in the prior State Court proceeding.

With respect to the third element, there was a final judgment on the merits in the prior proceeding as evidenced by the 10/19/10, 10/21/11 and 12/22/10 Orders.

Thus, all four elements of collateral estoppel are present. As noted above, the Gills maintain the State Court entered its findings on the first five pay applications from CRC to Rosenthal, and that they are entitled to an offset based on the sixth and final pay applications. This Court disagrees. The State Court Orders and the trial transcripts from June 2009 indicate the State Court was aware of the sixth and final pay applications.[20] If CRC believed the State Court misconstrued the evidence or made incorrect or incomplete findings, the time to raise those issues has long passed. This Court will not, and cannot under the *Rooker-Feldman* doctrine, second-guess the State Court's ruling on the issue of whether CRC is liable to Rosenthal under the Trust Fund Statute and Civil Theft Statute.[21]

---

[18] *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999); *Michaelson v. Michaelson*, 884 P.2d 695, 700-701 (Colo. 1994).

[19] *In re Barnes*, 377 B.R. 289 (Bankr. D. Colo. 2007), citing *In re Walker*, 325 B.R. 598, 601 (D. Colo. 2005); *Flooring Design Associates, Inc. v. Novick*, 923 P.2d 216, 221 (Colo. App. 1995); *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. App. 1988). *See also Fowler & Peth, Inc. v. Regan* (*In re Regan*), 311 B.R. 271 (Bankr. D. Colo. 2004), *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 477 F.3d 1209 (10th Cir. 2007), and *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 2007 WL 1346576 (D. Colo., May 4, 2007).

[20] For example, see page 2, paragraph 9 of the 10/19/10 Order where the sixth pay application is referenced (Exhibit 19) and page 108-117 of the June 24, 2009 trial transcript where the sixth and final pay applications are discussed.

[21] "Under the *Rooker-Feldman* doctrine, the federal courts lack subject matter jurisdiction to hear appeals from final judgments of state courts or to adjudicate claims that are inextricably intertwined with those judgments. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct.App. v. Feldman*, 460 U.S.

### B. Rosenthal is Entitled to Attorney Fees, Costs and Interest.

The 10/19/11 Order clearly sets forth the amount of damages and that treble damages are awarded. The 10/19/10 Order also includes an award of reasonable attorneys' fees and states, "All claims for attorneys' fees and costs shall be submitted within thirty (30) days of this Order."[22] This Court has not been provided any fee award from the State Court, but agrees that, pursuant to COLO. REV. STAT. § 18-4-401, Rosenthal may recover costs of the action and reasonable attorney fees. However, the attorney fees "must be limited to the time spent prosecuting the trust fund statute claim."[23] Pursuant to Colorado law, Rosenthal is also entitled to recover statutory interest at 8%.[24]

### C. Mark and Nancy Gill are Personally Liable for CRC's Violations.

As part of the Gills "Statement of Law," they rely on "conduct of officers" in COLO. REV. STAT. § 7-108-401(5) and "limitation of liabilities of directors and officers" in COLO. REV. STAT. § 7-108-402(2). The Gills' reliance on COLO. REV. STAT. § 7-108-401 is misplaced as the case law is clear that "[u]nder Colorado law, an individual in complete control of the finances and financial decisions of an entity which violated the Trust Fund Statute is personally liable for such violation."[25] The uncontested facts show the Gills were at all times officers, directors and sole shareholders of CRC, the Gill's controlled the business operations, finances and bank accounts of CRC, and they made all financial decisions for CRC. Based on these admissions by the Gills, and all the evidence in this matter, the Court finds the Gills are personally liable for CRC's violations of the Trust Fund Statute and Civil Theft Statute.

### D. The Debt is Non-Dischargeable Under § 523(a)(4).

Section 523 sets forth the exceptions to discharge and provides in relevant part, "(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[26]

---

462, 486-87, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)." *Ebel v. Ebel (In re Ebel)*, 139 Fed. Appx. 26, 28-29 (10th Cir. 2005) (not published in F.3d); *see also Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1139 (10th Cir. 2006).

[22] Rosenthal Exhibit 19, p. 6.

[23] *Parker Excavating, Inc. v. Parker*, 2010 WL 1258034, *3.

[24] *In re Barnes*, 377 B.R. 289, 299-300 (Bankr. D. Colo. 2007) ("Colorado law allows creditors harmed by a trustee's breach of duty to recover statutory interest at 8%, pursuant to COLO. REV. STAT. § 5-12-102(1)(b), from the date the breach of trust occurred.").

[25] *In re Barnes,* 377 B.R. at 298 , citing *In re Walker*, 325 B.R. 598, 601 (D. Colo. 2005); *Flooring Design Associates, Inc. v. Novick*, 923 P.2d 216, 221 (Colo. App. 1995); *Alexander Co. v. Packard*, 754 P.2d 780, 782 (Colo. App. 1988). *See also Fowler & Peth, Inc. v. Regan* (*In re Regan*), 311 B.R. 271 (Bankr. D. Colo. 2004), *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 477 F.3d 1209 (10th Cir. 2007), and *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 2007 WL 1346576 (D. Colo., May 4, 2007).

[26] 11 U.S.C. § 523(a)(4).

This Court agrees with the description of the interplay between the Trust Fund Statute and § 523(a)(4) as stated by the Honorable A. Bruce Campbell of this District:

> A creditor seeking to except a debt from discharge under 11 U.S.C. § 523(a)(4) must establish two elements. They are: (1) That a fiduciary relationship existed between the debtor and the creditor, and (2) that the debt owed to the creditor is attributable to the fraud or defalcation committed by the debtor in the course of the fiduciary relationship. *In re Storie*, 216 B.R. 283, 286 (10th Cir. BAP 1997); *In re Woods*, 284 B.R. 282, 288 (D. Colo. 2001).
>
> Determining whether a fiduciary relationship existed between the debtor and the creditor is a question of federal law, but state law is relevant. *In re Young*, 91 F.3d 1367, 1371 (10th Cir. 1996). In order to show a fiduciary relationship under § 523(a)(4), there must be an express or technical trust. *Id*. There are three requirements which must be satisfied in order for a statutory trust to create a fiduciary relationship which is sufficient under § 523(a)(4). There must have been a res of property entrusted to the trustee, the statute must create or identify some fiduciary duty, and the trust must be in place when the defalcation occurs. *In re Gunter*, 304 B.R. 458, 460-61 (Bankr. Colo. 2003). The Trust Fund Statute provides that "[a]ll funds disbursed to a contractor or subcontractor . . . on any construction project shall be held in trust for the payment of . . . subcontractors, labor or material suppliers. . . ." [COLO. REV. STAT.] § 38-22-127(1). This statute does create an express trust sufficient to establish a fiduciary relationship for the purposes of § 523(a)(4). *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 477 F.3d 1209, 1211 n. 1 (10th Cir. 2007). Plaintiffs are not required to have a properly perfected mechanics' lien, or still be able to perfect a lien, to be a beneficiary of the trust created by the Trust Fund Statute. *Fowler & Peth, Inc. v. Regan* (*In re Regan*), 151 P.3d 1281, 1289 (Colo. 2007).[27]

Because this Court has found CRC and the Gills liable under the Trust Fund Statute, COLO. REV. STAT. § 38-22-127(1), and for civil theft and treble damages, under COLO. REV. STAT. §§ 38-22-127(5) and 18-4-405, the same findings support a conclusion the debt owed to Rosenthal as set forth in the 10/19/11 Order is nondischargeable under § 523(a)(4).

## CONCLUSION

The Court finds CRC violated Colorado's Trust Fund Statute; CRC violated Colorado's Civil Theft Statute; Rosenthal is entitled to treble damages, attorney fees, costs and interest; Mark and Nancy Gill are personally liable for CRC's violations; and the debt is nondischargeable in the Gills bankruptcy proceeding pursuant to § 523(a)(4). Accordingly,

IT IS ORDERED Mark and Nancy Gill are personally liable for the debt owed by Colorado Regional Construction, Inc. to Rosenthal, as set forth in the State Court Orders, and such debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Judgment shall enter against Mark and Nancy

---

[27] *In re Barnes*, 377 B.R. at 296-297.

Gill and in favor of Rosenthal [on behalf of E Light Electric Services, Inc. ($27,500.50; Metro Carpet and Flooring, LLC ($6,384.76); The Door Company ($5,122.18); and T&G Hardwood ($20,290.00)] in the total amount of $59,297.44, plus treble damages and reasonable attorneys' fees and costs and applicable interest.

IT IS FURTHER ORDERED, as provided in the 10/19/10 Order, the amount awarded to Rosenthal, is to be held in constructive trust by Rosenthal for the benefit of the subcontractors identified above and in the 10/19/10 Order.

IT IS FURTHER ORDERED, within fourteen days of this Order, Rosenthal shall file an affidavit of attorneys' fees, a bill of costs, and a calculation of interest setting forth all reasonable attorneys' fees, costs and interest requested in this matter (including any state court orders awarding such fees, costs and interest). The Gills may file a response as to the reasonableness of the amount requested within 14 days of the filing of the affidavit. The Court will enter final judgment after determination of the amount of applicable attorneys' fees and costs.

Dated July 28, 2011

BY THE COURT:

Michael E. Romero
U.S. Bankruptcy Judge